ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KERRY MALONE,** ) | |
| ) | |
| **Petitioner,** ) | |
| **v.** ) | **Case No. 06-3073-JAR** |
| ) | |
| **DAVID McKUNE, et al.,** ) | |
| ) | |
| **Respondents.** ) | |
| ————————————————————) | |

## MEMORANDUM AND ORDER DENYING PETITION

This matter is before the Court on a Petition for a Writ of Habeas Corpus (Doc. 1) seeking federal habeas relief from a state conviction, pursuant to 28 U.S.C. § 2254.  After considering the parties' submissions, the Court is prepared to rule.  The petition is denied because petitioner Kerry Malone has failed to show that the state appellate court rendered a decision contrary to federal law or unreasonably applied federal law.

**I.  Background**

This matter stems from an explosion that occurred on August 1, 2001 at the Wyclef West Apartments in Johnson County, Kansas.  At the preliminary hearing, Glenda Sams testified that at about 2:00 a.m., petitioner, who was the father of her daughter, called her on the telephone wanting to get back together with her.  Sams testified that during that conversation she refused to get back together with petitioner and she hung up on him.  Sams testified that she was awakened later by an explosion that left her balcony hanging, and blew-in her wall.  Sams testified that she did not call the police after the explosion because she was scared and did not know what to do and instead, waited until 8:00 a.m. and called the apartment complex management, who in turn

had Sams call the police.  Sams testified that when the police asked her who she thought was responsible for the explosion, she named petitioner.  Sams was subject to cross-examination by petitioner's counsel during the hearing.

In finding probable cause after hearing all of the evidence at the preliminary hearing, Judge Stephen Tatum discussed Sams' testimony in addition to other evidence; namely, the testimony of Tony Page, who witnessed two persons leaving the apartment complex after the explosion and noted the license tag number, which matched the tag for petitioner's vehicle.  Page testified that he and his wife were standing in the apartment complex parking lot, where they lived, when he heard the explosion.  About ten seconds later, Page saw two white men run to a car about fifteen feet away from him, but he could not identify the men.  Page testified that he found it odd that the two men drove away with the lights off so quickly after the explosion, so he noted the license tag number and then immediately called the police.  Page told the police what he saw and heard, and then gave them the tag number, which turned out to be registered to petitioner.  Page would later testify at the trial, along with the police officer who interviewed him.

Petitioner was convicted of one count of aggravated arson in the district court of Johnson County, Kansas.  Petitioner now re-asserts the claim he made on direct appeal that the preliminary hearing testimony from Sams was erroneously admitted by the trial judge because the State of Kansas failed to prove that the victim was unavailable.  The Kansas Court of Appeals discussed the trial court's finding of unavailability but declined to decide the issue; instead, finding that any constitutional error was harmless because Sams' testimony would not have changed the outcome of the trial because there was sufficient evidence to support the jury's

verdict otherwise.[1]  Petitioner filed this habeas petition on March 10, 2006, maintaining that he is

entitled to relief because his right of confrontation under the Sixth Amendment was violated.

## II.  Standard

Because petitioner "filed his habeas petition after April 24, 1996, the provisions of the

Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this [proceeding]."[2]  The

AEDPA "'circumscribes a federal habeas court's review of a state-court decision.'"[3]  Under 28

U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state

court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented at the state court proceeding.

A state court's decision is "contrary to" an established federal law if the state court

reaches a different result than the Supreme Court would when presented with facts that are

"materially indistinguishable from a relevant Supreme Court precedent" or if the state court

"applies a rule that contradicts the governing law" set forth in Supreme Court cases.[4]  A decision

is an "unreasonable application" of clearly established federal law if a "state court identifies the

correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies

---

[1]95 P.3d 1042, 2004 WL 1878290 (Kan. Ct. App. Aug. 20, 2004) (unpublished table decision).

[2]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997)), *cert. denied*, 540 U.S. 973 (2003).

[3]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003)), *cert. denied*, 540 U.S. 916 (2003).

[4]*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

3

that principle to the facts of [a] prisoner's case."[5]  Unreasonable application of facts includes an unreasonable extension of a principle, or an unreasonable refusal to extend a principle to the facts at hand.[6]  The courts are to employ an objective standard in determining what is unreasonable.[7]

Although unreasonable determinations of fact are a second basis for a writ, a state court's determination of a factual issue shall be presumed to be correct.  The petitioner has the burden of rebutting this presumption by clear and convincing evidence.[8]  "This presumption does not extend to legal determinations or to mixed questions of law and fact."[9]  "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'"[10]  "Ultimately, our review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for evaluating state-court rulings."[11]

## III.  Analysis

The Kansas Court of Appeals did not determine whether the district court erred by admitting Sams' preliminary hearing testimony, instead finding any constitutional error harmless

---

[5]*Id.* at 413.

[6]*Id.* at 407.

[7]*Id.* at 409.

[8]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003), *cert. denied*, 540 U.S. 973 (2003); *Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002).

[9]*Martinez*, 330 F.3d at 1262 (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178–79 (10th Cir. 2000)).

[10]*Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

[11]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (internal citations omitted), *cert. denied*, 540 U.S. 916 (2003).

beyond a reasonable doubt.[12]  The parties agree that the issue presented in this petition is a mixed question of law and fact and therefore, the deferential standard of review to the state court's conclusions does not apply.  Therefore, this Court will "'resolve the claim unconstrained by AEDPA deference'" and will "review de novo the state court's legal conclusions and resolution of mixed questions."[13]  Nevertheless, applying a de novo standard, the Court determines petitioner fails to show that he was denied the right to confrontation under the Sixth Amendment.

For evidence in the form of prior testimony, such as at a preliminary hearing, to be admissible as evidence, the Sixth Amendment requires unavailability and a prior opportunity for cross- examination.[14]  Sams was subject to cross-examination during the preliminary hearing; at issue here is whether Sams was unavailable.  A witness is considered unavailable if the "prosecutorial authorities have made a good-faith effort to obtain [her] presence at trial."[15]  The lengths that the State must go to in order to produce a witness is a question of reasonableness.[16]  The State bears the burden of establishing unavailability.[17]

Whether the State made a good faith effort to procure Sams' presence at trial requires the court to look at all of the circumstances, assessing reasonableness in light of four relevant criteria: (1) the more crucial the witness, the greater the effort that is required to secure his or her attendance; (2) the more serious the crime for which defendant is on trial, the greater the effort

---

[12]95 P.3d 1042, 2004 WL 1878290 (Kan. Ct. App. Aug. 20, 2004) (unpublished table decision).

[13]*Trammel v. McKune*, 485 F.3d 546, 550 (10th Cir. 2007) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1220 n.14 (10th Cir. 2002) and citing *Romine v. Head*, 253 F.3d 1349, 1365 (11th Cir. 2001)).

[14]*Crawford v. Washington*, 541 U.S. 36, 69 (2004).

[15]*Ohio v. Roberts*, 448 U.S. 56, 75 (1980) (quoting *Barber v. Page*, 390 U.S. 719, 724–25 (1968)), *overruled on other grounds by Crawford*, 541 U.S. at 69.

[16]*McCandless v. Vaughn*, 172 F.3d 255, 266 (3d Cir. 1999) (quoting *Roberts*, 448 U.S. at 74).

[17]*Roberts*, 448 U.S. at 75.

the government should make; (3) if a witness has a reason to favor the prosecution, such as an immunity arrangement in exchange for cooperation, the defendant has a stronger interest in confronting the witness; and (4) "a good measure of reasonableness is to require the State to make the same sort of effort to locate and secure the witness for trial that it would have made if it did not have the prior testimony available."[18]

Petitioner first argues that without Sams' testimony, the State would not be able to prove its case beyond a reasonable doubt, and thus, a greater degree of effort to produce her at trial was required. As far as the importance of Sams' testimony to the State's case, the Court finds that it was very important because it provided a motive for setting the explosion. Sams testified that petitioner had contacted her prior to the explosion and that he continued trying to contact her when the police were taking her statement. She testified that she had declined his proposal that they get back together. This evidence, when coupled with Tony Page's testimony that identifies the license tag for petitioner's car leaving the scene on the night of the explosion, is highly probative of petitioner's guilt, and was therefore very important to the State's case.

Next, while the offense at issue in this case is a serious one, the consequences of a conviction are not "grave," as they would be in a capital case.[19] Nor was petitioner charged with an offense that carried a life sentence. As such, a full cross-examination before the jury was not as crucial as it may have been if Sams was the key witness in a more serious case.

The Court finds that the State's efforts to secure her attendance at trial were sufficient and reasonable, in light of the importance of her testimony and the seriousness of the charges against petitioner. After obtaining multiple trial continuances, the State filed a motion to

---

[18] *Cook v. McKune*, 323 F.3d 825, 836 (10th Cir. 2003).

[19] *See, e.g.*, *McCandless v. Vaughn*, 172 F.3d 255, 266 (3d Cir. 1999).

determine Sams unavailability on February 15, 2002.  The Court conducted a hearing on the

motion on February 22 and the State called Mark Blackwell and John Sanders, who both testified

about their multiple attempts to locate Sams before trial.  The court continued the unavailability

hearing to February 25, when it heard more testimony on the issue by Sanders.

   Blackwell, who works for the district attorney's office, attempted to find Sams at the

address where the explosion occurred twice with no success, before contacting Sams' father,

who informed Blackwell that she had moved to somewhere off of I-35 and Lamar.  Sams' father

did not have an exact address or a phone number but indicated to Blackwell that he would tell

Sams to contact Blackwell.  Blackwell was never contacted again by either Sams or her father.

   Sanders, a detective with the Overland Park Police Department, testified about his many

attempts to serve Sams with a subpoena to testify at petitioner's trial.  Sanders was able to locate

Sams' new address on West 51st Street and contacted the apartment management there, who

verified that Sams lived there and was current on her rent.  Sanders attempted to serve Sams in

person by going to her door and knocking on December 20, 2001.  On December 22, Sanders

went to Sams' father's house and spoke with her stepmother.  Sams' stepmother informed

Sanders that she did not know where Sams lived and that she had "dropped communications with

her."  On December 24, Sanders tried to knock on Sams' door again and also called a phone

number that he had procured for her.  Sanders could hear the phone ringing inside the apartment,

but no one answered and no answering machine ever picked up.  Sanders again tried to contact

Sams both in person and by phone on January 2, January 3, and January 4 and each time

received no answer.  Sanders tried to locate Sams on these days at different times of the day.  On

January 4, Sanders moved the doormat up onto the door so that he could tell if someone had

come or gone the next time he was there.

Next, Sanders visited Sams' sister, Becky, at her home to try to locate Sams.  Becky told Sanders that sometimes Sams becomes depressed and hides in her apartment and will not answer the phone.  Becky also gave Sanders their brother's name and phone number.  Sams' brother told Sanders that he had also been trying to locate Sams with no success.  He also told Sanders that he suspected Sams was living with petitioner again.

On January 7, 2002, Sanders again tried to locate Sams at her apartment and the doormat he had adjusted on January 4 was moved off of the door.  Sanders tried again on January 10 and on February 8.  On February 22, the State filed a motion that was granted for a material witness bond.  After being notified of the material witness warrant, Sanders again tried to find Sams at her apartment and tried to call her phone number, which had been disconnected.  Upon not finding Sams, Sanders went to the apartment across from Sams and spoke with her neighbor.  The neighbor told Sanders that she had not seen anyone come or go from the apartment since mid-January and that she had heard a male and female arguing in Sams' apartment.  The neighbor told Sanders that she had asked if the female was alright and she responded that she was fine.  The neighbor told Sanders that she thought her neighbor's name was Melanie because the name on the mailbox said "Malone/Sams."  Sanders tried calling Becky again, but her phone had been disconnected.  Sanders also left a message for Sams' brother, which was not returned.  After ultimately finding Sams unavailable and allowing her preliminary hearing testimony to be read into the record at trial, petitioner was found guilty.

Petitioner argues that the State should have made a greater effort to locate Sams, such as waiting outside her apartment for extended periods of time, or slipping a subpoena under her apartment door.  Petitioner also points to Sams' testimony that she was not evading service of the subpoena at a hearing on petitioner's motion for new trial.  Sams testified at this post-trial

hearing that she was unaware that police officers had been coming to her apartment and that she had not had contact with petitioner.  Sams testified that she was unaware of the trial and that she had appeared at the preliminary hearing because a subpoena had been slipped under her door before that hearing.

Like the state district court, this Court finds no constitutional violation in the State's failure to sit outside of Sams' apartment building for extended periods of time, nor in its failure to slip the subpoena under Sams' door.  The State made more than a reasonable effort to locate Sams, especially in relation to her importance as a witness and the seriousness of the offense.  Sanders' testimony in particular establishes that he made numerous attempts to serve Sams with her trial subpoena in person at various times of the day, and to reach her by telephone.  Sanders also made multiple attempts to contact Sams through immediate family members.  There was also some evidence that Sams was evading service because she had re-established her relationship with petitioner.  All of these facts combine to show a good faith effort on the part of the State to secure her attendance at trial.

Moreover, in contrast to petitioner's position, the fact that Sams was not cooperating with the State in exchange for her testimony decreases the petitioner's interest of having her be cross-examined in front of the jury.[20]  Sams did not have an incentive, as a result of an immunity agreement, to testify in line with the State's theory of the case.  If anything, it could be argued

---

[20]Petitioner suggests that because Sams did not have a cooperation agreement with the State, this factor is "inapplicable."  But this factor is one that works in both directions because the lack of the prosecution's relationship with the witness affects the reasonableness inquiry for the same reasons that the existence of a relationship does.  *See McCandless*, 172 F.3d at 270 (comparing the facts to those in *Roberts*, where the prosecution had made good faith efforts in light of the fact that the witness's testimony was not as crucial, the defendant was charged with the relatively minor crimes of forgery and possession of stolen property, and the prosecution had no connection with the witness).  The factor allows the Court to assess the defendant's interest in confronting a witness based on that witness's connection to the prosecution.  A defendant will have a stronger interest in confronting a witness who has struck an agreement with the prosecution.  *See Cook v. McKune*, 323 F.3d 825, 836 (10th Cir. 2003).

that she was more prone to testify on behalf of petitioner than the other way around.  Sams'
neighbor had told Sanders how she believed Sams' first name was Melanie because of the
mailbox that read "Malone/Sams," and Sams' brother told Sanders that he suspected petitioner
and Sams were back together again.  Therefore, there was no relationship between Sams and the
State that strengthened petitioner's interest in confronting her at trial.

Finally, petitioner argues that the State made a greater effort to secure Sams' presence at
the preliminary hearing than it did at trial.  Before the preliminary hearing, Sams was notified by
a subpoena that had been slipped under her apartment door at the same apartment where the
explosion had occurred.  Petitioner argues that the State should have tried this method again
since it had worked for the preliminary hearing.  The Court is not persuaded by this argument.
While this method may have been successful in notifying Sams that she was to testify at the
preliminary hearing, the State notes that this does not adequately constitute service.[21]  The effort
put forth by the State before trial was certainly more substantial: Blackwell attempted to serve
Sams a couple of times and Sanders attempted to serve Sams nine times in person, and tried to
contact her by telephone about that many times.  Further, Sanders contacted Sams' father, sister,
brother, step-mother, and neighbor in an effort to locate her whereabouts.  Under the totality of
the circumstances, the Court finds this was more than a good faith attempt to secure Sams'
attendance at trial and that the trial court did not error when it found her to be unavailable.
Accordingly, the Court need not proceed to review the Kansas Court of Appeals' conclusion that
any constitutional error was harmless.

**IT IS THEREFORE ORDERED BY THE COURT** that the Petition for a Writ of
Habeas Corpus (Doc. 1) is **denied**.

---

[21]*See* K.S.A. §§ 22-3415, 60-245.

**IT IS SO ORDERED.**

Dated this 9<u>th</u> day of August 2007.

                              <u> S/ Julie A. Robinson            </u>
                              JULIE A. ROBINSON
                              UNITED STATES DISTRICT JUDGE




*Malone v. United States*, Memorandum and Order Denying Petition, Case No. 06-3073-JAR.